UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ANTHONY HINRICHS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | CASE NO. 1:05-cv-0813-DFH-TAB |
| BRIAN BOSMA, in his official capacity | ) | |
| as Speaker of the House of | ) | |
| Representatives of the Indiana | ) | |
| General Assembly, | ) | |
| | ) | |
| Defendant. | ) | |

ENTRY ON DEFENDANT'S MOTION TO STAY JUDGMENT PENDING APPEAL

On November 30, 2005, the court entered its findings of fact and conclusions of law and issued a permanent injunction and declaratory judgment. Plaintiffs had shown that the official prayers to open sessions of the Indiana House of Representatives repeatedly and consistently advanced the beliefs that define the Christian religion, in violation of the Establishment Clause of the First Amendment to the United States Constitution. *Hinrichs v. Bosma*, 400 F. Supp. 2d 1103, 1104 (S.D. Ind. 2005). The sectarian content of the substantial majority of official prayers in the Indiana House took the prayers outside the safe harbor the Supreme Court recognized for inclusive, non-sectarian legislative prayers in *Marsh v. Chambers*, 463 U.S. 783 (1983); see also *County of Allegheny v. American Civil Liberties Union*, 492 U.S. 573, 602-05 (1989) (legislative prayers in *Marsh* did not violate Establishment Clause "because the particular chaplain had 'removed

all references to Christ'"); *id.* at 630-31 (O'Connor, J., concurring) (legislative prayer in *Marsh* did not violate Establishment Clause because both the long history and the "nonsectarian" character of the practice avoided conveying "a message of endorsement of particular religious beliefs"). On December 28, 2005, the court denied the defendant's motion to amend the judgment. *Hinrichs v. Bosma*, 2005 WL 3544300 (S.D. Ind. Dec. 28, 2005).

On January 13, 2006, the defendant Speaker of the House of Representatives moved for a stay of this court's permanent injunction pending appeal. The injunction requires the defendant not to permit sectarian prayers to be offered as part of the official proceedings of the House of Representatives. The injunction gives the Speaker the constitutional option of continuing to permit non-sectarian prayers as part of the official proceedings. If he chooses to do so, the injunction requires him to advise all persons offering such prayers (a) that the prayers must be non-sectarian and must not be used to proselytize or advance any one faith or belief or to disparage any other faith or belief, and (b) that the prayers should not use Christ's name or title or any other denominational appeal. The Speaker's motion papers indicate that he has chosen the option of not permitting any official prayers at all in the Indiana House while he pursues an appeal. The injunction does not apply, of course, to informal and unofficial gatherings of Members of the Indiana House or others who wish to join them in offering private and unofficial prayers.

As explained below, the court denies the motion for a stay pending appeal. The defendant has not shown that he or others will suffer cognizable irreparable harm by complying with the injunction while the appeal goes forward. The injunction allows official non-sectarian prayers like those the Supreme Court approved in *Marsh.* Neither the defendant nor any other person has a constitutional right to use an *official* prayer to express and advance his personal religious beliefs. The balance of harms also weighs against a stay. A stay would return the defendant's practices to the systematic official endorsement of one particular religion in violation of the plaintiffs' rights and the most basic principles of the First Amendment. The defendant also has not shown that he is likely to succeed on the merits of his appeal. Taxpayer standing is justified when plaintiffs identify, as they have in this case, specific public expenditures on the practice they challenge. On the merits, this court's decision is consistent not only with *Marsh v. Chambers* but with every other court decision that has addressed a practice of sectarian official prayer.

I.    *Standard for Stay Pending Appeal*

Under Rule 62(c) of the Federal Rules of Civil Procedure, the district court may stay an injunction pending appeal. A Court of Appeals may grant such relief under Rule 8(a) of the Federal Rules of Appellate Procedure. Such a stay is considered "extraordinary relief" for which the moving party bears a "heavy burden." *Winston-Salem/Forsyth County Board of Education v. Scott*, 404 U.S.

1221, 1231 (1971) (Burger, C.J., in chambers) (denying stay of school desegregation order).

The decision on a stay pending appeal is similar to the equitable decision to grant or deny preliminary injunctive relief. The court should consider (a) whether the appellant has shown a likelihood of success on appeal; (b) whether the appellant has demonstrated a likelihood of irreparable harm if a stay is not granted; (c) whether a stay would substantially harm other parties to the litigation; and (d) the public interest. *Glick v. Koenig*, 766 F.2d 265, 269 (7th Cir. 1985) (affirming denial of stay pending appeal); accord, *Indianapolis Colts v. Mayor & City Council of Baltimore*, 733 F.2d 484, 486 (7th Cir. 1984) (stay granted in part to allow parallel litigation to proceed and denied in part to allow football team to prepare to play in new city). In such cases, the district court tries to "minimize the costs of being mistaken." *Abbott Laboratories v. Mead Johnson & Co.*, 971 F.2d 6, 12 (7th Cir. 1992) (vacating denial of preliminary injunction). If the threat of irreparable harm is grave, a stay may be appropriate even if the appellant's prospects of success on the merits are not bright. *Books v. City of Elkhart*, 239 F.3d 826, 828 (7th Cir. 2001) (Ripple, J., in chambers) (granting stay where both sides agreed it was appropriate); *Cuomo v. Nuclear Regulatory Comm'n*, 772 F.2d 972, 974 (D.C. Cir. 1985) (per curiam) (denying stay of issuance of license for low power testing at nuclear power plant).

II.     *Irreparable Harm and the Balance of Harms*

The irreparable harm and balance of harm factors weigh heavily against a stay in this case.  In evaluating the parties' arguments on harm if a stay is denied or granted, the court must compare two situations:  the current situation under the injunction if a stay is denied, and a return to the House's prior practices if a stay is granted.

The Speaker reports that, to comply with the injunction, he and the House have "suspended official prayer in order to avoid interfering with individuals' consciences and discriminating among religious sects."  He argues that the opening official prayer "has an important solemnizing effect on House proceedings, and the Court's Order directly interferes with the Speaker's ability to accommodate the religious needs of those who lead these prayers in service to the House."  Def. Stay Mem. at 5.  The Speaker contends the suspension of opening prayers is causing irreparable harm every day.

The Speaker's choice to suspend all official prayer is certainly constitutional, but it also is certainly not required by the court's injunction.  The injunction allows the Speaker and the House to have official prayers if they wish to do so, so long as those prayers do not advance a particular religion and/or disparage others.  At least some of the 2005 session's prayers in the record (admittedly a minority) fall squarely within the tradition of non-sectarian and inclusive public prayer approved in *Marsh v. Chambers* and the cases applying its

principles.  There is no indication that the Speaker or any other persons suffered harm from those prayers or that they were inadequate to serve the solemnizing effect described by the Speaker.  Those prayers were also consistent with the Speaker's own admonitions to those offering prayers, which said: "The invocation is to be a short prayer asking for guidance and help in the matters that come before the members.  We ask that you strive for an ecumenical prayer as our members, staff and constituents come from different faith backgrounds." Jt. Ex. 19.  The injunction is intended to make that request stronger and more effective, of course.  But it is difficult to see how irreparable harm would result from strengthening the Speaker's own request for ecumenical prayers that take into account the different faiths of Members, staff, and constituents.

The Speaker's suggestion that the injunction causes discrimination among religious sects is groundless.  This court has explained the reasons in detail in the original findings and conclusions, 400 F. Supp. 2d at 1126, and in denying the motion to alter or amend the judgment, 2005 WL 3544300, at *5.  In short, the injunction applies to sectarian prayer that advances *any* particular religion.  The injunction is more specific as to prayers that advance the Christian faith because that has been the source of the Establishment Clause violation.  There is no evidence that any official House prayers offered by non-Christians have ever been specific to those persons' religions, let alone that they have been so frequent and pervasive as to signal a government endorsement of a particular faith.

The Speaker's claim that the injunction interferes with his "ability to accommodate the religious needs of those who lead these prayers" reflects a persistent misunderstanding of the court's decision and of the applicable law.  All individuals – the Speaker, all House Members, and any guests who might be invited to offer an official prayer – retain the right to pray and worship as they see fit in private and non-official settings.  Any court order to the contrary would run counter to the First Amendment's Free Exercise and Free Speech Clauses, and to the freedom of religion and freedom of conscience that have been at the core of American liberty since before the United States of America was founded as a nation.

Official prayers are different.  The Speaker properly stipulated that the official prayers are government speech, for he has not attempted to create a public forum in which all are welcome to express their faiths.  He controls access to this particular podium and forum for official prayer.  There is "a crucial difference between *government* speech endorsing religion, which the Establishment Clause forbids, and *private* speech endorsing religion, which the Free Speech and Free Exercise Clauses protect."  *Santa Fe Independent School District v. Doe*, 530 U.S. 290, 302 (2000), quoting *Board of Education v. Mergens*, 496 U.S. 226, 250 (1990) (opinion of O'Connor, J.) (emphasis in original).  No individual has a First Amendment right to offer an *official* prayer reflecting his *personal* religious beliefs.  When speaking and acting for the government, for the state, an individual does not have a constitutional right to wrap the government's power and prestige

around his personal religious beliefs.  Thus, under the injunction, the only harm is one that the law does not recognize:  the Speaker is denied the ability to allow individual Members or visiting clerics to offer official prayers that reflect and advance their particular individual religious faiths, to the exclusion of others.

On the other hand, if the court were to grant a stay, it is reasonable to expect that the House's prayer practices would revert to those of the 2005 session. Those practices have been described in detail in the court's findings.  The Speaker offers no reason to expect any change.  The result would be a resumption of the practice of having the substantial majority of official prayers reflect specifically Christian beliefs.  The effect of such a practice would be the continued official messages endorsing Christianity.

The Speaker suggests that the only harm a stay would impose on the plaintiffs would be the fractional shares of the modest public expenditures associated with the official prayers.  That suggestion fails to recognize the additional harm to plaintiffs and to the public from continued violations of the Establishment Clause.  As the Seventh Circuit explained in *American Civil Liberties Union of Illinois v. City of St. Charles*, 794 F.2d 265, 275 (7th Cir. 1986): "We conclude that in considering whether the plaintiff in a case under the establishment clause has shown irreparable harm, and how much, the court is not confined to the particular harm on which the plaintiff's standing to sue is

based; it can consider the effect of the defendant's conduct on the interests protected by the clause if the injunction is not granted."

The interests protected by the Establishment Clause in this case reach far beyond those modest public expenditures.  The systematic and overwhelming expression of Christian faith in official prayers sends a message of official endorsement of one faith and exclusion of others.  That message runs counter to that same American tradition of freedom of worship and conscience.  As part of the vigorous public debate that has accompanied the filing of this case and the court's decision, two rabbis eloquently expressed the harm caused by *official* sectarian prayers that reflect specifically Christian beliefs:

> When we attend a church or a mosque, we are guests.  We marvel at and appreciate the richness and drama of the rituals and customs of our neighbors.  The music and the language of the prayers are not our own, but beautiful nonetheless.  We are grateful for the hospitality of friends who have invited us to witness the depth of their faith.  We feel welcome, but it is not our home.
>
> However, when we attend a public event sponsored by our city, state or national government, we are not guests.  We are family, part of the large gathering of diverse citizens, equal stakeholders, who make up the tapestry of our nation.  We expect the words spoken to include all citizens regardless of race, gender or religion.  We should not simply be tolerated or even warmly welcomed.  We should not be made to feel like visitors.  We should feel at home.

Senior Rabbis Dennis & Sandy Sasso, Op-Ed., *Time to Move Forward*, The Indianapolis Star, Jan. 3, 2006.

Religious liberty for all is more secure when the believers of one faith cannot systematically appropriate the power and prestige of the government to advance their faith.   Continued violation of the Establishment Clause would cause irreparable harm and would be contrary to the public interest.

III.    *Stays in Establishment Clause Cases*

In seeking a stay pending appeal, the Speaker relies on two other Establishment Clause cases, *Books v. City of Elkhart*, 239 F.3d 826 (7th Cir. 2001) (Ripple, J., in chambers), and *Chambers v. Marsh*, 675 F.2d 228 (8th Cir. 1982), the appellate decision reversed by the Supreme Court in *Marsh v. Chambers*. Neither decision shows that a stay is warranted in this case.

In *Books v. City of Elkhart*, the Seventh Circuit found that a large stone monument inscribed with the Ten Commandments in front of a municipal building violated the Establishment Clause.   The Seventh Circuit's mandate directed the district court to craft an appropriate remedy.   Judge Ripple issued a stay of the mandate pending action on the city's petition for a writ of *certiorari*. Any such remedy would have removed the monument or caused irreparable damage to it, and the court expected the remedy decision to take some time.   Also, both the plaintiffs and the defendant agreed that a stay was appropriate. 239 F.3d at 828-29.   Under those circumstances, Judge Ripple's decision to stay the mandate was practical, understandable, and perfectly reasonable.   In this

case, there is no comparable threat of irreparable harm in the absence of a stay, and the balance of harms weighs against granting a stay.

In *Chambers v. Marsh*, the Eighth Circuit had ordered the Nebraska legislature to stop conducting any official prayers and to stop paying the part-time chaplain. The court stayed its mandate pending Supreme Court review. The Speaker has attached to his brief a copy of the Eighth Circuit's docket showing that the stay was issued, but there is no readily available writing that explains that decision. Even in the absence of a written opinion, the Eighth Circuit's decision to stay is also understandable. The Supreme Court had not yet spoken on the debatable practice of legislative prayers. Disruption of the existing and long-term contractual relationship with the chaplain could have caused some modest irreparable harm. More important, during the course of the litigation, the legislature and chaplain had modified their prayer practices so as to avoid explicitly Christian prayers. See *Marsh v. Chambers*, 463 U.S. at 793 n.14. Thus, the Eighth Circuit's stay allowed essentially the same non-sectarian prayers that this court's injunction allows. The Eighth Circuit most assuredly did not allow official Christian prayer to continue, which is the relief Speaker's motion for stay requests in this case.

In support of a stay, the Speaker also invokes the concept of comity, the respect that national and state sovereigns accord to one another in our federal system of government. See *Van Zandt v. Thompson*, 839 F.2d 1215, 1219-20 (7th

Cir. 1988) (holding that Illinois could build a prayer room in its state capitol, noting the importance of "deference to the internal spiritual practices of another branch of government or of a branch of the government of another sovereign," but also noting that "Legislators are not immune from the strictures of the establishment clause with respect even to their internal practices."). Precisely because of these concerns, the court has crafted an injunction enforcing the Establishment Clause as narrowly as possible. The injunction leaves the Speaker and the House considerable latitude in deciding how to comply with the Establishment Clause, so long as they do not pursue a practice that amounts to official endorsement of one particular religion. But comity does not amount to immunity from the United States Constitution. *Adams v. Walker*, 488 F.2d 1064, 1065 (7th Cir. 1973) (denying stay pending appeal of order requiring reinstatement of state official; "We do not undertake lightly an intrusion into the affairs of state government," but 42 U.S.C. § 1983 clearly provides for relief when state officials violate federal constitutional rights).

IV.     *Likelihood of Success*

   A.     *Standing*

After plaintiff Anthony Hinrichs was fired from his job as a lobbyist for the Indiana Friends Committee on Legislation, plaintiffs restricted their claim of standing to their standing as Indiana taxpayers. Plaintiffs supported their standing with evidence of modest public expenditures on the practice of offering

official prayers in the Indiana House of Representatives.  The court reviewed that evidence and the applicable law in the original findings and conclusions.  The key point is that plaintiffs took to heart the lessons of prior case law and identified specific expenditures on the challenged practice.  See *Doremus v. Board of Education*, 342 U.S. 429, 433-34 (1952) (denying standing where plaintiffs failed to show "measurable appropriation or disbursement of school-district funds occasioned solely by the activities complained of"); *Everson v. Board of Education*, 330 U.S. 1, 3-4 (1947) (reaching merits of challenge to public school district expenditures on bus transportation for children attending parochial schools); *Doe v. Madison School District*, 177 F.3d 789, 794 (9th Cir. 1999) (finding no standing for taxpayer who identified "no tax dollars that defendants spent solely on the graduation prayer, which is the only activity that she challenges").

To support taxpayer standing, the expenditures need not be great, as shown by *Lynch v. Donnelly*, 465 U.S. 668 (1984), in which city taxpayers had standing to challenge the twenty dollars per year that a city spent on a Nativity scene as part of a larger holiday display.  See *Donnelly v. Lynch*, 525 F. Supp. 1150, 1162 (D.R.I. 1981) (plaintiffs who actually paid their local taxes had standing), *id.* at 1156 (noting estimated costs of twenty dollars per year attributable to creche), *aff'd*, 691 F.2d 1029,1030-32 (1st Cir. 1982), *rev'd on merits*, 465 U.S. 668 (1984); see also *American Civil Liberties Union of Illinois v. City of St. Charles*, 794 F.2d 265, 274-75 (7th Cir. 1986) (citing *Lynch* on standing and holding that plaintiffs

had standing to challenge government display of cross because they modified their routes in town to avoid seeing display).

In the motion for stay, the Speaker relies on language in the Seventh Circuit's recent decision in *Freedom from Religion Foundation, Inc. v. Chao*, No. 05-1130, — F.3d —, 2006 WL 73404 (7th Cir. Jan. 13, 2006). In *Freedom from Religion Foundation*, the Seventh Circuit held that federal taxpayers could have standing to challenge the expenditure of federal funds on conferences to promote the President's faith-based and community initiatives. The decision had to navigate a narrow path among the Supreme Court's Establishment Clause decisions involving federal taxpayer standing in *Flast v. Cohen*, 392 U.S. 83 (1968) (taxpayers had standing to challenge federal grants to parochial schools), *Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464 (1982) (taxpayers did not have standing to challenge executive agency's donations of surplus government property to religious institutions), and *Bowen v. Kendrick*, 487 U.S. 589 (1988) (taxpayers had standing to challenge executive agency's grants to religious institutions).

In the course of the majority opinion, Judge Posner rejected the government's argument that there is a decisive difference in taxpayer standing cases between grant programs specifically authorized by Congress and the executive branch's use of appropriated funds without such specific limits on their use. Judge Posner first posed a hypothetical example in which a federal official

decides to fight terrorism by using federal funds to build a mosque and to pay an imam.  Such a case would support taxpayer standing regardless of how specific the appropriations bill had been.  2006 WL 73404, at *5.

Judge Posner then noted that, at "the other extreme, the fact that almost all executive branch activity is funded by appropriations does not confer standing to challenge violations of the establishment clause that do not involve expenditures."  He explained:

> Imagine a suit complaining that the President was violating the clause by including favorable references to religion in his State of the Union address. The objection to his action would not be to any expenditure of funds for religious purpose; and though an accountant could doubtless estimate the cost to the government of the preparations, security arrangements, etc., involved in a State of the Union address, that cost would be no greater merely because the President had mentioned Moses rather than John Stuart Mill.  In other words, the marginal or incremental cost to the taxpaying public of the alleged violation of the establishment clause would be zero.

2006 WL 73404, at *6.  The Speaker relies on Judge Posner's reference in this passage to marginal or incremental cost.  The Speaker has argued against taxpayer standing in this case on the theory that, because the costs of sectarian and non-sectarian prayers are the same, he could comply with a court order enforcing the Establishment Clause without reducing expenditures.

This court explained in the original findings and conclusions and again in denying the motion to amend the judgment why plaintiffs are not required to show marginal costs in the sense that the Speaker has argued, that is, that judicial

relief would actually reduce public expenditures.  See *Hinrichs*, 400 F. Supp. 2d at 1112-14.  Judge Posner's hypothetical example about the State of the Union address is much closer to the graduation prayer cases and some public display cases cited in the original findings and conclusions.  In those cases, taxpayers were denied standing because they simply failed to identify any public expenditures specifically attributable to the challenged practices.  See, *e.g.*, *Doe v. Madison School District*, 177 F.3d 789, 794 (9th Cir. 1999) (finding no standing for taxpayer who identified "no tax dollars that defendants spent solely on the graduation prayer, which is the only activity that she challenges"); *Friedmann v. Sheldon Community School District*, 995 F.2d 802, 803 (8th Cir. 1993) (same); accord, *Gonzales v. North Township of Lake County*, 4 F.3d 1412, 1416 (7th Cir. 1993) (no taxpayer standing to challenge public display of crucifix that had been donated to the county, where no government money was used for its upkeep); *Freedom From Religion Foundation, Inc. v. Zielke*, 845 F.2d 1463, 1470 (7th Cir. 1988) (plaintiff conceded that no tax funds were used to display Ten Commandments monument in park).

In this case, plaintiffs complied with the Supreme Court's teaching in *Doremus v. Board of Education* and the cases following it.  They have identified specific public expenditures on the challenged practice.  See *Doremus*, 342 U.S. 429, 433-34 (1952) (denying standing where plaintiffs failed to show "measurable appropriation or disbursement of school-district funds occasioned solely by the activities complained of"), distinguishing *Everson v. Board of Education*, 330 U.S.

-16-

1, 3-4 (1947).  To that extent, but only to that extent, there has always been some "marginal cost" requirement for taxpayer standing.  Judge Posner's State of the Union example did not address, let alone endorse, the further step the Speaker wishes to take.  That step would allow a government defendant in a taxpayer standing case to defeat standing merely by showing that it could avoid unconstitutional practices without actually reducing expenditures.  This court is not aware of any court decisions taking the *Doremus* requirement that further step, and several courts have rejected that further step.  See *Hinrichs v. Bosma*, 400 F. Supp. 2d at 1112-14 (reviewing case law).  Also, of course, it has long been clear that taxpayer standing requirements are higher for federal taxpayers challenging federal expenditures, as in *Freedom from Religion Foundation*, than they are for state and local taxpayer challenges to state and local government spending.[1]

The reason that taxpayer standing is recognized, especially in Establishment Clause cases, is because public funds are spent on unconstitutional forms of public endorsement or advancement of religion.  Taxpayers are entitled to object to such expenditures even if the local or state government could modify its behavior to conform to the First Amendment without reducing expenditures.  That reason remains applicable here.  The court can grant a remedy that removes the

---

[1]The Speaker's choice to comply with the injunction by suspending all official prayers also means that the effect has been to avoid entirely the modest public expenses of having any official prayers.  At least to that extent, the *actual* effect of the injunction should satisfy even the defendant's argument about the requirements of taxpayer standing.

harm of public spending on a practice that violates the Establishment Clause. Plaintiffs have therefore satisfied the core Article III requirements for standing: personal injury that is fairly traceable to the challenged activity, and that is likely to be remedied by a favorable court decision.  See, *e.g.*, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *Books v. Elkhart County*, 401 F.3d 857, 861 (7th Cir. 2005).

*Freedom from Religion Foundation* also noted the prudential limits on standing, limits that can apply beyond the core Article III requirements.  2006 WL 73404, at *2-3.  Along these lines, it is worth noting why it is prudent to recognize standing for the taxpayer plaintiffs in this case.  There are others who also would have standing to challenge the sectarian prayers in the Indiana House.  These could include Members of the House who oppose the practice, or others such as House staffers or private lobbyists whose work or other activity has exposed them to sectarian official prayers on a regular basis.

One must recall, however, that plaintiffs have chosen to challenge a practice favored by a majority of the elected Representatives of the people of Indiana. Plaintiffs have sued a powerful official and have challenged a choice by an even more powerful legislature.  In the life of the State of Indiana, the Speaker and the Members of the House exercise great power.  Those who work for them and those who petition them for government actions must rely on their judgment, their discretion, and even their good will.

The plaintiffs' lawsuit has stirred strong emotions and public debate.  The record in this case indicates that plaintiff Anthony Hinrichs lost his job as a lobbyist for the Indiana Friends Committee on Legislation because he filed this lawsuit.  See Docket No. 29.  Those who work for the House or whose jobs require them to rely on the good will of the House could reasonably expect to pay a stiff price for standing up for their rights under the Establishment Clause.  That is not to say that whenever there is a constitutional violation, someone must have standing to sue.  Nor is the court suggesting that a plaintiff must be insulated from all collateral consequences of bringing an unpopular lawsuit.  In considering prudential limits on standing, however, the courts can recognize the practical forces at work that discourage such lawsuits by more vulnerable plaintiffs even when the constitutional violations are clear.

For these reasons, the court is not persuaded that a stay should be granted on the theory that the Speaker is likely to succeed on his appellate challenge to plaintiffs' standing.

B.    *Merits of the Establishment Clause Claim*

The parties and the court have already spilled a fair amount of ink on the Establishment Clause issues in this case.  Just a few new points and citations deserve further comment before this case makes it way to higher courts.

The Speaker argues that this court has relied on mere dicta in *Marsh v. Chambers* to conclude that sectarian prayers advancing a particular religion violate the Establishment Clause.   The Speaker suggests that *Marsh* was distinguishing between opening prayers on the one hand and "sermons or extended efforts to 'exploit' others and convert them to a particular faith." Def. Stay Mem. at 9.   The argument is not persuasive, for reasons the court has already explained in detail in light of the pervasively Christian content of most official prayers during the 2005 session.   The Speaker's argument is inconsistent with the Supreme Court's own treatment of *Marsh* in *County of Allegheny v. American Civil Liberties Union*, 492 U.S. 573 (1989).   The Court explained that the Establishment Clause prohibited the government from affiliating itself with any one specific faith or belief, and that even a long history of a practice could not save "practices that demonstrate the government's allegiance to a particular sect or creed."   492 U.S. at 603.   The Court continued:   "The legislative prayers involved in *Marsh* did not violate this principle because the particular chaplain had 'removed all references to Christ.'"   *Id.* at 603; *id.* at 630-31 (O'Connor, J., concurring) (explaining that legislative prayer in *Marsh* did not violate Establishment Clause because both the long history and the "nonsectarian" character of the practice avoided conveying "a message of endorsement of particular religious beliefs").   This court's injunction follows that interpretation of *Marsh*, as other courts have.

On the merits the Speaker also repeats his argument that the court should not try to draw a line between sectarian and non-sectarian prayers. He offers new support for this argument with citations to cases involving church property and employment issues, which often arise within the jurisdiction of civil courts. See Def. Stay Mem. at 12-14. The Supreme Court has tried to avoid using legal rules that would require civil courts to resolve theological or ecclesiastical questions. See, *e.g.*, *Thomas v. Review Board*, 450 U.S. 707, 715-16 (1981) ("judicial process is singularly ill equipped to resolve [intrafaith] differences in relation to the Religion Clauses," and "Courts are not arbiters of scriptural interpretation"); *Jones v. Wolf*, 443 U.S. 595, 603-04 (1979) (rejecting approach that "would require the civil court to resolve a religious controversy," and explaining that doctrine is designed "to free civil courts completely from entanglement in questions of religious doctrine, polity, and practice"); *Serbian Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 713 (1976) (general rule is that "religious controversies are not the proper subject of civil court inquiry"); *Presbyterian Church v. Hull Memorial Presbyterian Church*, 393 U.S. 440, 445-46 (1969) (property dispute between national church and local congregations; it is "wholly inconsistent with the American concept of the relationship between church and state to permit civil courts to determine ecclesiastical questions").

Those cases provide support for Justice Brennan's dissenting views in *Marsh*, in which he argued that the majority's acceptance of non-sectarian and inclusive official prayers would diminish the true religious significance of prayer

and would entangle courts in precisely the sorts of problems the Speaker is raising here. See 463 U.S. at 819-21 (Brennan, J., dissenting); *Hinrichs v. Bosma*, 400 F. Supp. 2d at 1123-28 (addressing these issues). The fact remains, however, that the Supreme Court majority in *Marsh* took the different approach that allows some official prayer, but not all. The Court left for lower courts and perhaps itself in later decisions the usual task of marking the boundary more precisely by applying the general principles to particular facts. This court has tried to mark that boundary in this case, consistently with decisions of other courts that have squarely confronted the issue of sectarian official prayer. See *Simpson v. Chesterfield County*, 404 F.3d 276 (4th Cir. 2005); *Wynne v. Town of Great Falls*, 376 F.3d 292 (4th Cir. 2004); *Bacus v. Palo Verde Unified School District*, 52 Fed. Appx. 355, 2002 WL 31724273 (9th Cir. 2002); *Rubin v. City of Burbank*, 124 Cal. Rptr. 2d 867 (Cal. App. 2002).

The fact also remains that no court has suggested that any difficulty in drawing a boundary between sectarian and non-sectarian prayer means that government officials are free to use official prayers to endorse or advance their own religious beliefs, which is the conclusion advocated by the Speaker. The Speaker's reasoning and the non-entanglement cases he has cited point instead toward a *prohibition* on official prayer, not toward unlimited power of a majority to advance its own faith in official settings, which is the relief the Speaker seeks through a stay pending appeal.

In considering the merits as relevant to the motion for stay, perhaps the most salient point is that no court has addressed and approved sectarian official prayer practices at all comparable to those shown by the evidence in this case, and which the Speaker's motion seeks permission to continue.  See also *Lee v. Weisman*, 505 U.S. 577, 641 (1992) (Scalia, J., dissenting) ("our constitutional tradition . . . [has] ruled out of order government-sponsored endorsement of religion – even when no legal coercion is present, and indeed even when no ersatz, 'peer-pressure' psycho-coercion is present – where the endorsement is sectarian, in the sense of specifying details upon which men and women who believe in a benevolent, omnipotent Creator and Ruler of the world are known to differ (for example, the divinity of Christ)"); accord, *Larson v. Valente*, 456 U.S. 228, 244 (1982) (one command of the Establishment Clause is "clear[ ]," that "one religious denomination cannot be officially preferred over another").  Accordingly, the Speaker has not shown a reasonable likelihood of success on appeal on the merits of the case.

For these reasons, the court denies the defendant's motion for a stay of the permanent injunction pending appeal.

So ordered.

Date: January 24, 2006

_____
DAVID F. HAMILTON, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Kenneth J. Falk
ACLU OF INDIANA
kfalk@aclu-in.org

Thomas M. Fisher
INDIANA STATE ATTORNEY GENERAL
Tom.Fisher@atg.in.gov